## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,   ) | |
|                   ) | |
|        Plaintiff,       ) | |
|                   ) | Case No._____ |
|    v.               ) | |
|                   ) | |
| U.S. FISH AND WILDLIFE SERVICE;   ) | **COMPLAINT FOR DECLARATORY** |
| MARTHA WILLIAMS, in her official   ) | **AND INJUNCTIVE RELIEF** |
| capacity as Director of the U.S. Fish and   ) | |
| Wildlife Service; and DEB HAALAND,   ) | |
| in her official capacity as Secretary of the   ) | |
| U.S. Department of the Interior,   ) | |
|                   ) | |
|        Defendants.     ) | |
|                   ) | |

## INTRODUCTION

1.      Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue final rules for two distinct population segments ("DPS") of the lesser prairie chicken (*Tympanuchus pallidicinctus*). These findings are past the deadlines established by the Endangered Species Act ("ESA" or "the Act"). The agency's failure delays crucial, lifesaving protections for the lesser prairie chicken, increasing its risk of extinction.

2.      The lesser prairie chicken is found in southeastern Colorado, southwestern Kansas, the panhandle of northwestern Oklahoma, east-central New Mexico, and the northeastern and southwestern corners of the Texas Panhandle. Kansas has the largest population of lesser prairie chickens, but the bird's habitat is highly fragmented.

3.      Because lesser prairie chickens are vulnerable to birds of prey, they instinctively stay away from vertical structures that raptors utilize as perches, including trees and, more recently, powerlines, telephone poles, and drilling rigs. As a result of these increasingly common manmade structures, the birds have a rapidly diminishing number of places to live. The lesser

prairie chicken's decline has also been fueled by the degradation and fragmentation of the vast southern Great Plains through conversion to cropland, grazing of cattle, and oil and gas development, as well as by drought and high temperatures linked to global warming.

4.      Accordingly, in 1995, the Center's predecessor organization, the Biodiversity Legal Foundation, submitted a petition to the Service to extend the substantive protections of the ESA to the lesser prairie chicken by listing the species. In response, the Service added the bird to the list of candidates for ESA protection, where it remained for over 10 years. A candidate species is one that qualifies for protection as an endangered or threatened species but receives no protection while it waits for listing. In 2011, after a lawsuit by the Center and its partners, the Service agreed to submit a listing rule by 2012 and the chicken was finally listed as threatened under the ESA in 2014. However, the listing was challenged by an oil and gas industry group in the United States District Court for the Western District of Texas. The Court vacated the listing rule and the Service removed the lesser prairie chicken from the list of endangered or threatened species.

5.      In 2016, the Center and partners submitted a new petition to list this species. In 2019, the Center sued the Service for failing to meet deadlines required by the Act. Once again, after proposing in 2021 to list the Southern DPS of the lesser prairie chicken as endangered and the Northern DPS as threatened, the Service has failed to finalize these rules on time. Defendants have abrogated their duty to ensure that the lesser prairie chicken is timely protected to avoid further decline and an increased risk of extinction, in violation of Section 4 of the ESA.

6.      The Center brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service is in violation of the ESA by failing to timely finalize proposed rules for the lesser prairie chicken and directing the Service to finalize its overdue rules by a date certain.

## JURISDICTION

7.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to

issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and Administrative Procedure Act, 5 U.S.C. § 706(2).

8.      Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated August 11, 2022 (received August 15, 2022). Defendants have not remedied the violations set out in the notice and an actual controversy exits between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this judicial district and a substantial part of the violations of law by Defendants occurred in this district.

## PARTIES

10.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including in Washington, D.C. The Center has more than 89,000 active members throughout the country.

11.      The Center brings this action on behalf of its organization, and its staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from the lesser prairie chicken and its habitat. Plaintiff's interests in protecting and recovering this species and its habitat are directly harmed by the Service's failure to issue timely findings.

12.      For example, Michael Robinson, a senior conservation advocate at the Center and a member of the Center since the early 1990's, hikes in lesser prairie chicken habitat, has searched for lesser prairie chickens in the wild, reads scientific studies about lesser prairie chickens, and has written detailed comments to the Service explaining the need for lesser prairie chickens to receive the protections of the ESA. Mr. Robinson resides in southwestern New Mexico and intends to drive to eastern New Mexico in early 2023 to hike in lesser prairie

3

chicken habitat again, with the hope of seeing the birds.  He regards the lesser prairie chicken as a remaining emblem of the much-degraded southern Great Plains, whose ecological history he has studied and written about.  Mr. Robinson cares deeply about the lesser prairie chicken's survival and recovery and is harmed by the Service's continued delay in protecting this bird.

13.     Brett Hartl, the Center's Government Affairs Director and Center member since 2013, has seen lesser prairie chickens in the wild and intends to search for them again in the immediate future. Mr. Hartl enjoys bird watching and receives deep intrinsic value from observing wildlife; it is his favorite pastime. Mr. Hartl's interest in the lesser prairie chicken is harmed by the Service's delay. Without active conservation measures, it will become even more difficult for him to observe these birds in the future, reducing his personal enjoyment.

14.     Defendants' violation of the ESA's nondiscretionary mandatory deadlines has delayed the ESA's protections for the lesser prairie chicken, harming the Center's members' interests in them. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no other adequate remedy at law.

15.     Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the species at issue in this suit. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

16.     Defendant MARTHA WILLIAMS is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Williams is sued in her official capacity.

17.     Defendant DEB HAALAND is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Haaland is sued in her official capacity.

4

## STATUTORY FRAMEWORK

**The Endangered Species Act**

18.     The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is, "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

19.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. *Id.* § 1532(16) (defining "species"). For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

20.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

21.     ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

22.     The ESA defines a "species" as, "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). A "distinct population segment" of a species is also known as a "DPS." When considering whether a population segment qualifies as a DPS under the Act,

Service policy requires the agency to determine whether the population is "discrete" and "significant." If the Service determines that a population segment is both discrete and significant, then the population qualifies as a DPS and meets the ESA's definition of a "species" that may be classified as threatened or endangered.

23.     A species is "endangered" when it, "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24.     The ESA requires the Service to determine whether any species is endangered or threatened because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

25.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

26.     If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

27.     Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

28.     If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

29.     Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule."

## FACTUAL BACKGROUND

30.     The lesser prairie chicken is an imperiled bird from the grouse family found in the Southwestern United States. Like other western grouse, male lesser prairie chickens engage in a unique and elaborate (and sometimes viewed as comical) communal breeding display each spring to attract females. Both males and females congregate at breeding grounds, known as "leks", where the males strut ("dance"), vocalize ("boom") and physically confront other males to defend their territories and court females. The male repertoire includes displaying bright yellow eye combs, inflating red air sacs, flutter-jumping, cackling, and foot-stomping.

31.     The main threats facing this unique bird are habitat loss and degradation from livestock grazing, agriculture, oil and gas extraction, herbicides, mining and roads, and wind-energy production. The birds' habitat is also lost to fences, power lines, and other tall structures that beckon predators to perch.

32.     The Service found that if population declines for the lesser prairie chicken continue as projected, there is an increased risk of, "losing one or more representative ecoregions" for the birds. Additionally, all of the birds', "ecoregions are at some elevated level

of risk of extirpation" and, "species viability for this species will continue to decline." *See* Species Status Assessment Report for Lesser Prairie Chicken, March 2021.

**Listing Petition and Response**

33.      In 1995, the Biodiversity Legal Foundation submitted a petition to list the lesser prairie chicken as threatened or endangered under the ESA. In 1998, the Service added the lesser prairie chicken to its candidate list. 63 Fed. Reg. 31,400 (June 9, 1998). A candidate species is one that qualifies for protection as an endangered or threatened species but receives no protection while it waits—often for years—for the Service to promulgate a regulation listing the species as endangered or threatened. The Service subsequently reaffirmed the need for listing the lesser prairie chicken, reconfirming its status as a candidate species in 2001, 66 Fed. Reg. 54,808 (Oct. 30, 2001); 2002, 67 Fed. Reg. 40,657 (June 13, 2002); 2004, 69 Fed. Reg. 24,876 (May 4, 2004); 2005, 70 Fed. Reg. 24,870 (May 11, 2005); 2006, 71 Fed. Reg. 53,756 (Sept. 12, 2006); and 2007, 72 Fed. Reg. 69,034 (Dec. 6, 2007).

34.      In 2008, the Service changed the lesser prairie chicken's listing priority number ("LPN") to one that reflected a change in threats to the species from "moderate" to "high" priority. 73 Fed. Reg. 75,176 (Dec. 10, 2008). The LPN is the Service ranking system to prioritize species on the candidate list. Instead of acting to protect the lesser prairie chicken from, "an anticipated increase in the development of wind energy and associated placement of transmission lines throughout [its] estimated occupied range," the Service continued to leave the bird to languish on the candidate list. *Id.*

35.      The Service reconfirmed the lesser prairie chicken as a candidate species in 2009, 74 Fed. Reg. 57,804 (Nov. 9, 2009); 2010, 75 Fed. Reg. 69,222 (Nov. 10, 2010); and 2011, 76 Fed. Reg. 66,370 (Oct. 26, 2011). In 2010, the Center and partners sued the Service for failing to meet deadlines under the ESA to timely protect the lesser prairie chicken.

36.      In 2011, the Service reached a settlement agreement with the Center and partners. *In re Endangered Species Act Section 4 Deadline Litigation*, No. 10-377 (EGS), MDL Docket

No. 2165 (D.D.C. May 10, 2011). The agreement required the Service to submit a proposed listing rule for the lesser prairie chicken by 2012.

37.    In 2012, the Service proposed to list the lesser prairie chicken as a threatened species. 77 Fed. Reg. 73,828 (Dec. 11, 2012). In 2013, the Service published a proposed rule and then subsequently announced a 6-month extension based on its finding that there was disagreement about the data relevant to the proposed rule. 78 Fed. Reg. 41,022 (July 9, 2013).

38.    After over a decade since the Center's 1995 petition, in 2014, the Service published a final rule listing the lesser prairie chicken as a threatened species. 79 Fed. Reg. 19,973 (Apr. 10, 2014); *and see* 79 Fed. Reg. 200,73 (4(d) rule (Apr. 10, 2014)).

39.    The following year, an oil and gas industry group brought a lawsuit challenging this rule. On September 1, 2015, the rule was vacated by the United States District Court for the Western District of Texas. The Service removed the lesser prairie chicken from federal protection. 81 Fed. Reg. 47,047 (Sept. 1, 2015).

40.    In 2016, the Center and its partners submitted a second petition. In response, the Service published a positive 90-day finding that the petition to list the lesser prairie chicken presents, "substantial scientific or commercial information indicating that the petitioned actions may be warranted." 81 Fed. Reg. 86,315 (Nov. 30, 2016). In 2019, the Center filed a lawsuit challenging the Service's failure to timely determine whether the lesser prairie chicken warrants protection under the Act. The parties entered into an agreement that required the Service to submit a 12-month finding no later than May 26, 2021.

41.    On June 1, 2021, the Service published its 12-month finding that proposed to list two DPS of the lesser prairie-chicken under the Act. 86 Fed. Reg. 29,432 (June 1, 2021). The Service proposed to list the Southern DPS as endangered and the Northern DPS as threatened. *Id.* The Center submitted comments on that rule on September 1, 2021, including incorporating by reference the 213 pages of comments and studies pertaining to the lesser prairie chicken that the Center had submitted to the Service on April 28, 2021.

42.     Since that time, the Service has failed to timely finalize the proposed rule for both the Southern DPS and Northern DPS of the lesser prairie-chicken. The Service's final rule should have been published by June 1, 2022.

## CLAIMS FOR RELIEF
### Violation of the ESA for Failure to Publish a Timely Final Rule For the Southern DPS of the Lesser Prairie-Chicken

1.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

2.     The ESA requires the Service to publish a final listing rule with a critical habitat designation one year after it publishes a 12-month finding with a listing determination. Defendants failed to perform their nondiscretionary duty to publish a timely final rule for the Southern DPS of the lesser prairie chicken, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## CLAIMS FOR RELIEF
### Violation of the ESA for Failure to Publish a Timely Final Rule and For the Northern DPS of the Lesser Prairie-Chicken

1.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

2.     The ESA requires the Service to publish a final listing rule with a critical habitat designation one year after it publishes a 12-month finding with a listing determination. Defendants failed to perform their nondiscretionary duty to publish a timely final rule for the Northern DPS of the lesser prairie chicken, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.   Declare that Defendants have violated the ESA by failing to issue timely final rules (or a single dual-DPS rule) for both the Southern and Northern DPS of the lesser prairie chicken;

2.  Provide injunctive relief compelling Defendants to publish the final rule(s) at issue in this complaint in the Federal Register by a date certain;

3.  Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4.  Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.  Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 25th day of October, 2022.

*/s/ Douglas W. Wolf*
Douglas W. Wolf (NM Bar No. 7473)
3191 La Avenida de San Marcos
Santa Fe, New Mexico 87507
Phone: 703-994-1309
dwwolf@aol.com

*/s/ Camila Cossío*
Camila Cossio (OR Bar No. 191504)
(Association of Attorney Licensed Outside the District forthcoming)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

*/s/ Brian Segee*
Brian Segee (Cal. Bar No. 200795)
(Association of Attorney Licensed Outside the District forthcoming)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Phone: 805-750-8852
bsegee@biologicaldiversity.org

*Attorneys for Plaintiff*